25-30380, U.S. v. Debrow, and we will begin with Dustin Talbott for Debrow. Good morning, your honors, and may it please the court. I'm Dustin Talbott, and I represent the appellant Talonzo Debrow, who is before this court with the next iteration of a Second 22-G-1, something that this panel is intimately familiar with. The predicate that Mr. Debrow brings before the court today is Louisiana aggravated criminal damage to property, a statute in Louisiana that makes it a crime to damage or destroy property where it's foreseeable that human life could be in danger. It's kind of like a reckless property offense under Louisiana law, where you destroy property, but there's a chance that someone could have been harmed during the destruction. The facts of Mr. Debrow's predicate offense are as follows. He was driving a reported stolen vehicle. Police officers conducted a traffic stop, and they boxed him in. One police unit was in front of his vehicle, and one police unit was behind. And Mr. Debrow reversed, and struck the vehicle behind him, and then put his car in forward, pulled forward, and struck the vehicle in front of him, and then he was arrested. He had a passenger in the car, and also located in the car was a stolen firearm that was located between the passenger seat and the passenger door. And those are all the facts that we have about the predicate offense. Okay. And you are relying on those facts to say he isn't dangerous, correct? That is correct. Okay. So there's a lot that just happened there in that opening, and I respect that is your position here. But you therefore, of course, as we are, are bound to say the predicate analysis is relevant in this circuit, correct? That is correct. And no other circuit takes that approach, correct? Just the Fifth Circuit. Okay. So we're on our own little island, and then we look at the predicate, and we ask, but you're saying, hey, this isn't a predicate like drug trafficking in Kimball, and this isn't a predicate, a theft predicate. This is a property predicate. So if the analysis were categorical, you might argue that you win there. But instead, you're accepting that we look at the facts, and you went right away to the PSR paragraph. That's where we know these facts, correct? Well, the... The only place we know there was a crash and there was a gun is from the PSR. The greatest explanation of the facts is actually in the government's opposition to the motion to dismiss below. That is at record page 33. The PSR has fewer facts, oddly enough, than what the government... We don't assess whether someone's dangerous so that we know the framers would have disarmed them for the rest of their life based on a government motion, opposition to a motion to dismiss. Right. Well, I guess... So I guess I'm saying, if you... You're saying what's good for the goose is good for the If the government can look at surrounding facts to say, this person is so dangerous, they would never have been able to have a gun. You're saying equally that the defense can look at the facts and say, no, they're actually a good guy. Is that basically your argument? Well, I guess what I would say is that there's not a dispute about the facts in this case. I guess let me say that. There's not like a... There's not an inconsistency between the PSR and the government's representation. But I'm just being... Testing this theory, because the law is very, in my mind, maybe our fault. But you're taking the unusual position, I think it's fair to say for a defense, to accept that we can peek behind the predicate and look at facts. Now, you may say, well, that's binding law. But when you say it doesn't really matter here, isn't that the end of your case? Because if you agree those are the related involved facts, crash plus gun, and the crash, unfortunately, is a crash into policemen, then you've put yourself in the world of Bettencourt and Simpson. Well, I guess I don't want to make that concession, right? Well, you have... Your brief position is saying, let's look at the facts. You just think the facts show he's not such a dangerous guy. Right. Well, that's true. I guess if I could step back, Mr. Higginson, this court, with all due respect, has an inconsistent line of cases since Diaz. Diaz and Collette both use a categorical approach to say that all thefts are categorical disarmament predicates. Kimball makes the same analysis with drug trafficking predicates. But pretty much all the cases in the middle, Bettencourt, Morgan, Reyes, Simpson, all of those cases break the categorical approach and look at the specific facts of the predicate. The facts of this case are most similar to Bettencourt, Reyes, and Simpson, all cases where this court looked at the facts of the predicate. So in briefing... And then we affirmed. And you affirmed. That's correct. I think this case is quite distinguishable from those that I'll talk about. Yeah, go ahead. But I don't want to concede which approach is correct, right? Because I think categorically we would win, right? Okay, but I want to ask, do we have any cases where there was an aggravated criminal damage that we did not affirm the guilty? I think this is the first case that has an aggravated criminal damage to property predicate, right? Bettencourt was aggravated assault with a vehicle. Okay, whatever. But I'm just saying we don't have any case where an aggravated criminal damage was found to not be sufficient to do 922 G1. That's correct. Yeah. I don't believe this court has... That's correct. It's a property crime. That's right. I don't believe the court has really delved into the property crime except for with respect to burglaries and certain thefts. But this isn't just the property. This is that it could also hurt someone. So it's not just walking up to somebody's house that's gone and no one's there and they go and... That isn't what would be sufficient for this case in the district court. It would require that you can hurt a person. Why isn't that sufficient? So it requires that it's foreseeable that someone could be hurt. It does not require intentionality to hurt someone. It does not require that the defendant is trying to destroy property in order to harm someone. That's a different charge, right? So under the facts of this case, if Mr. Dubrow was trying to hurt the officers, right, he wouldn't have been charged with aggravated criminal damage to property. He'd been charged with a different offense, which is aggravated assault of a peace officer or aggravated battery. But the statute at issue in this case is meant for cases where the defendant did not intend to hurt someone, but he should have known that his actions were reckless and that the destruction of the property could have harmed someone. And there's no evidence here that anyone was harmed, obviously. The context of the facts, even as presented by the government below, show that this is a low-speed situation, right? He's boxed in. The word boxed in means that the police officers have put their cars close enough that he can't fool around. So they're within feet, right? So what do you understand the government, the whole point, we're doing a historical test here. So we've got to look back and say the framers had a property crime that they would have found disarmed the person for life. And what do you understand the government to be saying the historical analog is? So on appeal, the government points to none, right? The government just points to this court's precedent. In the district court below, the government pointed to some English laws, the bloody laws that made capital punishment applicable to almost all crimes, including some property crimes against the crown. But as we replied in the district court below, our founders didn't adopt those laws, right? We didn't impose capital punishment for property crimes like this. So the government has not a single founding error regulation that would have imposed capital punishment. I think the answer will be, well, we're doing it derivatively. We're doing it whatever the Fifth Circuit said in Simpson and Bettencourt, that's the analog that we think applies. Even though those were assaults on people, we think that analog, we'll hear from the government, sweeps in property crimes too. That is the government's argument. And those cases are kind of based on the going armed laws, which are valid considerations for this court under Diaz and the Supreme Court in Rahimi. And so obviously going armed laws are meant to disarm people who are about menacing the public with weapons. And Bettencourt and Reyes and Simpson, they derive from the body of case law here that talks about violent offenses. And those violent offenses go back to going armed laws, right? And so that is where the government is trying to fit the case, right? But again, the facts of this case are so materially different than Bettencourt and Simpson and Reyes, right? If I could compare the facts of these. So in Bettencourt, the defendant is in a high speed chase. He's not boxed in in some small environment, right? He goes over 100 miles an hour. He causes a catastrophic crash that injures multiple people. And so he's not charged with a property crime. He's charged with aggravated assault with a vehicle, which requires some intentionality to harm a person, not property, okay? And so that's a little bit different. In Reyes, the defendant also is in a high speed chase. He turns his lights off. He's running stop signs. And the defendant, Reyes, also has a predicate for a drive-by shooting, right? A bunch of other predicates. Yes. And so the evasion charge in that case is part of a formula of other things that the court looks at. Simpson is the closest case, if I'm being honest, right? So in Simpson, the defendant accelerates away from a traffic stop. So we're not in a small boxed-in area where there's a fender-bender front and back, and then he's arrested. He accelerates away, presumably at a high speed. It's unclear from the record. But he crashes, and he has a loaded gun on his possession, and he has cocaine. And the court talks about those facts, like, in conjunction and says, like, those things in the case, like fleeing the police at a high speed, you know, crashing your car, and then doing it while you're armed with a loaded weapon and have cocaine. That creates this, you know, history of violence and dangerousness that fits it within the going arm laws and the violence cases. So the world that we're in in the Fifth Circuit alone is that we have to have many trials on often 15-year-old state convictions to figure out how bad was the crash? Was there a gun? Was there drugs? That's the world that we're in? Not only is that the world we're in, Judge, that's what we've been advocating for in the district courts, right, as the federal defenders, saying we should have a chance to contest these facts. We should have hearings on some of these issues. Now, you wouldn't be able to do that if we had a categorical approach. You're absolutely correct, Judge. We wouldn't. How do other Americans out there who don't want to go to jail but do want to have guns, how do they know whether the facts of their past are so bad the Fifth Circuit will say, oh, your conviction sticks? Judge, I think... How does any American in the Fifth Circuit know whether the facts of their predicate in a PSR paragraph qualify or not based on anything this Court has written? Imagine how defense lawyers have to advise clients when they ask if they can have a gun and their predicate is something that we don't know yet. It's absurd. It is absurd. It is. I will say that, you know, this Court has yet to see a viable vagueness challenge on that grounds. I think they're coming, right, because there are people who possess guns in the middle of this last year and a half who, when they possess the gun, it's really unclear whether their predicate qualified or not. No cert that you know of is pending. You guys haven't... You're not aware of any en banc. I guess the only other place this exact problem would come up would be in the Third and the Sixth, because they are even broader on the facts, right? Yeah, that's correct. They can look at... It's almost like a bond hearing. And what do you... Have you studied that at all? What are district courts doing, jury instructions? What is the government doing? I don't know what the jury instructions are, but I do know that they basically have what is equivalent to like a bond hearing in the Sixth Circuit, which is, you know, the government and defense put on all the evidence about the defendant's past and ties and all to determine whether they're dangerous. I certainly don't want to say that that's better, right? But, you know, I would love to come back to Mr. Dubrow. You come back to me. And, you know, so in Mr. Dubrow's case, right, his facts are demonstratively less violent, less dangerous than the three cases that the government relies on, Simpson, Reyes, and Betancourt. And so, you know, to be honest with you, Judge Higginson, there's been a lot of petitions to try to resolve this issue between the categorical approach and the breaking the categorical approach and going down to the facts. I hope this court grants one of those at some point and resolves that issue. Mr. Dubrow, I think, would win under a categorical approach, but I also think he wins under the facts. Well, but it's theft-related. Say that again? It's theft-related. He might not win. Well, right. His is not theft-related, but if it were theft-related... Well, it's a property crime, and we broadly said, extending Diaz, we've said theft-related property. He might have been hung back then. And the reason I would argue against that is, I mean, Diaz is based on the horse thievery, you know, capital punishment. I don't think there's capital punishment for offenses like this, right? If you recklessly damage someone else's property, even if someone might have been hurt, the government has found none. I have found no colonial laws that would have punished that seriously. Does it matter that Louisiana says this is a crime of violence? Do we turn on titles? It does not because of Doucette, right? The case where this court reversed an attempted cultivation of marijuana offense. That offense under Louisiana law is also a crime of violence, right? And so this court was not concerned with Louisiana's definition of whether it's a crime of violence. Your client had a separate felony, marijuana possession. We've said that doesn't count, right? That's right, under Hembree. So there, and that's it. He had no others. That's right. I think his marijuana might have been a misdemeanor, but even if it was a felony, it wouldn't be good under him. So it's all on this one property crime. It's all on this one, and the facts of this case show, both under the statute categorically, but the facts itself, he did not intend to harm a person, right? He directed at a police vehicle. He's trying to drive around it, and he strikes it, okay? This is, if he would have, if there was any evidence he intended to harm the cop, there are separate Louisiana statutes that would have covered that. He was never even charged with aggravated assault on a peace officer. He wasn't even charged with aggravated flight from an officer, which is the comparable Louisiana crime to what was charged in Reyes and Simpson, which were the Texas evasion statutes. So this statute is demonstratively different than the precedent that the government's relying on, and it also, the facts are much less, and so I urge the Court to focus on that. Okay. Thank you. You have time for rebuttal. We'll now hear from Robin McCoy for the U.S. Good morning, Your Honors. May it please the Court. My name is Robin McCoy, and I represent the appellee, the United States of America. And today, the United States asks that this Court affirm Mr. Dubrow's conviction in the court below, and particularly confirm the constitutionality of 922 G1 as applied to Mr. Dubrow and his predicate felony conviction of Louisiana aggravated criminal damage to property. And there is no other felon. That's the one. Your Honor, you're correct. That's only one. And it's important that it's aggravated criminal damage to property, which I think Judge Haynes was also focused on, because the aggravated nature of that crime includes, as an element of the offense, that it is foreseeable to Mr. Dubrow, when he commits his conduct, it is foreseeable to him that he will endanger human life. He pled guilty to that. And it is not simply a reckless property damage, as the defense may try to present it today. There's an element. But your brief is very clear, footnote two, you are not relying on a categorical approach. Your Honor, we are not relying on... So you're relying on the facts, okay, correct? Correct. All right, and it's facts that are what? Related to, involved in, the underlying offense of conviction? We're looking at... What orbit of facts that a district court can use, or the government? Is it any fact related to, so including 404B, or is it a tighter orbit? Your Honor, I don't think that this court has firmly decided what the orbit of the facts is. And I know, specifically, Judge Higginson, you have been concerned with that throughout the last year, in hearing these types of cases. And to the extent I have both of you exasperated questions, it's fully exasperated at what the Fifth Circuit has decided. It is not the government or the defense position. I just don't understand what facts decide if a person is so dangerous they lose their Second Amendment right. So in other words, the Fifth Circuit is the circuit that is least friendly to the Second Amendment right now, in my view, because no American could know, are they dangerous enough or not? So for example, let's say you had the exact same predicate, but you didn't have the PSR paragraph 28. So we didn't know it was a crash, we didn't know he had a gun. Would you say he would go to jail or not under Fifth Circuit law? Well, to go slightly a bit broader than that, the government's position is that all predicate felonies qualify. Elsewhere. Yes. I understand that's the approach in other circuits. That is not the approach in the Fifth Circuit. But I think even if we wanted to narrow down the scope and we say these extra facts that we have from paragraph 28. No crash, no gun. Say we don't know that. You just, a single, yes. We know that if we want to look at the elements of the offense, he's charged with aggravated criminal damage to property. We know that the aggravated nature of that required him to use intentional force or intentionally damage the property that was occupied by someone else in such a way. But what would your historical analog be? It is an issue of first impression. Our court has never jumped into the property world and said this one property crime you committed means you can never have a gun again. So where is there precedent? Because we've now said Simpson and Betancourt aren't relevant if we can't look at the facts. It would be an issue of first impression, right? Your Honor, we are squarely within the bucket of violence and dangerous cases. From the facts of the PSR. Well, I think even if you just look at the elements, the elements are telling you that we're in that same bucket. But we would be the first, this would be the first panel to ever say that in a property. Well, but 922 G1 says no felon can use a gun. So felons wanting to use a gun would need to try to find an exception. So it's not the, it's not, oh, you've got to, you've got, you shouldn't have known that you did that. No, I mean, to me it's the opposite. You have to try to find an exception and otherwise don't carry a gun if you were a felon. And so here aggravated, why wouldn't that tell somebody, oops, I don't think that's going to be okay for me to carry a gun if, if a police officer finds me, right? Correct, Your Honor. And at the first level of inquiry, you're absolutely right. You're on notice simply by being a convicted felon. You're on notice as is every other American in the country. 922 G1 is very clear on that. It is, Your Honor. So this, these exceptions are exceptions. They are exceptions and there is, and this is not briefed in the materials today, but I think Your Honor is alluding to, there is a path that one could take if they want to determine whether they can either have their gun rights restored or whether this is going to be relevant to them or applied to them, but that's not the area of the law that we're in. And that's certainly not what Mr. Dubrow did. Right. So I think if we look at just. But you, you agree if the government can argue as you have throughout the brief, trying to situate this, it's a six page argument. You, you, you anchor it fully on Simpson and Betancourt. That requires us to look at the crash and the gun. That's how your brief was written. Yes, Your Honor. Okay. So you do agree that if you can look at the facts, the defense counsel can look at facts if they were showing it wasn't so aggravated. Yes, Your Honor. Okay. And I certainly think that in the cases that this court has heard over the last year and a half, that those arguments have been presented. I think every defendant is trying to distinguish himself or herself from the categories this court has found, uh, justified disarmament. They are trying to establish that their particular conduct wasn't violent or dangerous. So it does go both ways. And our law allows that. And my question is how, when does that happen in the district court? Let's assume the defendant does not file a motion to dismiss. They just want to get in front of a jury. What does the jury instruction say about dangerousness, about these exceptions? Your Honor, I don't think that this is a jury issue. Oh, so the judge, the judge gets to decide to what level of convincing proof, beyond a reasonable doubt or preponderance. Your Honor, I think that this is, as it has come up time and time again, it is the best posture in a motion to dismiss. No, but I'm saying that it doesn't have to file a motion to dismiss. They can put the, they can put the government to its proof. So when, when does the court and the government just get to take this away from a jury? What's your authority for that? Well, the predicate felony has already been established as a matter of law. The felony itself. But you're saying we have, you're, you're, when, if they don't file a motion to dismiss, does the government have to say, we want to treat pretrial motion to show you how bad this guy is? I think we could perhaps have a motion in limine. Your Honor, I think at some point, maybe you're going to butt up against old chief and the defendant's privilege not to have the facts. So no one files anything, which happens fair bit. That guy doesn't want to plead. They go to the jury. You're saying what? This doesn't get submitted to the jury. What Your Honor, there's no law on this either way. There's certainly, certainly no law that says that there is an apprendee type finding on a second amendment challenge like this. I do think that this issue is going to become more prevalent as we go forward on this path, but that's not what happened here. This was aired out. We do have the facts, the facts do put them in a bucket. To what level of convincing force were the facts of the crash and the gun proven? Beyond a reasonable doubt? No. Guilty plea? No. It's a sentencing fact. It was found to a preponderance. Well, it was in the state court. He pled guilty to the fact that it had the aggravated nature. No, I know. But where are those facts? Do we know what the guilty plea? Was there a factual basis that said crash, police, guns? Yes or no? That is not part of the record. All that we have in the record is the Louisiana State Trooper's official report referred to in the paragraph, correct? Do you have any other record evidence in this record? We have the representations that are in the motion to dismiss. Government representations? Based on public court filings. If you're right that the court decides it, which I don't think is correct, if you're right that the court decides it, all this court had was the Louisiana State police officer, a reference to it. That report isn't even in the record. It's a reference to it. Yes? Yes. Okay. Let's say the defendant said, I don't agree with those facts. And then the district court at sentencing had said, you know what? I'm not going to decide that issue because I'm going to sentence you here. Would you be able to rely on the crash and the gun then if it had not been adopted by the district court? Your Honor, that's not what happened here. I know I'm just asking you to try to understand G-law. Would you be able to rely on it if the defendant had said opposite to what he says here? I don't think that's what happened in this case. I certainly don't think we would be in the firm place we are now. I don't think that we could rely wholly on it if there is a rebuttal of that evidence or any sort of objection. But here they agree to it. He's in fact arguing it and therefore this case is right on Simpson and Bettencourt. Is that what you're saying? I think this case is squarely in the Bettencourt, Reyes, and Simpson line of cases, which clearly stand for the proposition that a defendant's dangerous use of a vehicle, when that results in a felony conviction, that is dangerous and violent conduct that can be disarmed under 922 G-1. So we are squarely within this court's precedence from last year. But Simpson did have armed on his person plus drugs. You're thinking those don't matter so much? It's not that they don't matter, Your Honor, but this court in Simpson said it's not dispositive that he had a gun. He could have not had a gun. How far down can we go with Americans to say, oh, you're still barred for life for the gun? How do we tell people who don't want to go to jail but do want a gun? It's not the drugs that matter. It's actually not even the gun that mattered. It's that you accelerate too much. What about if you didn't have a high-speed chase? You just went away. You didn't stop when they're following you. Is that a sufficient predicate? Well, I may be misunderstanding your question. The gun, both the instant federal conviction and the prior state felony. I'm just looking at the predicate. Okay, just the predicate. Because they're similar in that they both involve trying to get away from police in a stolen car with a stolen gun. So they're very similar facts. But if we're just looking at what happened in 2019, he was not a felon at the time. So he could have the gun legally at the time, and then he's convicted for that behavior. But why the gun is relevant, not just positive, but not irrelevant, is because it increased the propensity for violence. It invites a violent confrontation. And the facts of this case, as established in paragraph 28, what Mr. Dubrow did was not just a fender bender. He has stopped at an intersection of two roads in Shreveport in the late hours of the night when the state police see him driving a stolen car. So they box him in, as opposing counsel said. Well, he hits reverse and hits the gas and rams the trooper behind him. And then he hits the gas and rams the trooper in front of him and pins the door closed. But what the PSR says in paragraph 28 is that the troopers have to remove him from the stolen car at gunpoint. This is clearly within the category of dangerous and violent offenses. He didn't just get out and say, I give up. Once you start looking at the facts, I mean, sorry, defense counsel, there's a lot that's sort of scary about that incident. Yes, Your Honor, there is. And so it does fall within what this court has held in the last year can be permanently disarmed. Scary people can't have guns. I don't think that's the court's words, but yes, dangerous people can be permanently disarmed. Yes, constitutionally. And for those reasons, Your Honor, the United States would ask that this court affirm the constitutionality of this conviction. Thank you. Just to be clear, have we, pardon my ignorance, have we dealt with the permanent aspect of it or just applying 922G1 on a case-by-case basis? Because, you know, the Supreme Court has reserved the question of permanent disarmament. I'm not aware that we've necessarily touched it categorically. I don't think that we have done it categorically, but in this court's cases, you know, there's... We've upheld various 922G1 convictions. That's different from saying forever. Yes, I think the only... I'm only pausing because you said permanent, and I just wanted to make clear, I'm not sure we've actually gone that far. The Supreme Court's reserved the issue. I'm not sure we've touched it yet either. I think the word permanent is in this court's opinions as opposed to G3. Well, in describing... 922G1 absolutely does it. The question is, does that... Have we upheld that against Second Amendment challenge? And I'm not aware that we've had a case where the time has been so extensive between the dangerous... I agree. If your question is, has a case... You'd have to have a case with that fact, right? Where the crime at issue took place at time one and 25 years later, some extended period of time, such that you're really basically upholding 922G1 as a permanent disarmament statute. I'm not sure we've had that case. I don't think you've had that particular issue. I think the closest thing I can think of would be Cochraham, where the predicate felony, I think, had been a long number of years before... But of course, Cochraham's challenge prevailed. Right, correct. And that's a non-violent offense that's completely different from what we have here. Okay. Any other questions? Okay, thank you. All right, we'll have the rebuttal. Judge Ho, I'd like to jump right in at the question you asked. We did raise a challenge in the Timothy LeBlanc case to the length of time between the predicate and the current offense. In the Timothy LeBlanc case, the district court dismissed the case and the government appealed, and this court reversed. He had a robbery conviction that was 20 years old when he was 18 years old. And he had been reformed, and the district court made all those findings as part of his dismissal, but this court reversed as bound by Schnur and Bullock on the violent nature of the prior offense. So I don't know if there's any other ones coming, but we specifically raised that at some point in time, the permanence can't be constitutional anymore, right? At some point... What was the time period in LeBlanc? Pardon my ignorance. I think it was either 18 or 20 years between the predicate and the current offense. And Judge Hagerstein, I just want to address a couple things. The lack of specificity in this record and the lack of proof in the record should be held against the government. It's their burden. But you didn't object. You didn't object to that. Look, there was no objection to the PSR. District court then at sentencing says, everyone okay with that? Defense said yes. The defense lawyer and the district court did not object. That's correct, Judge. So I sort of, why don't I take those facts then as virtually equivalent to a guilty plea? Well, I think you can consider those facts. Right, you're asking us to consider. I guess the point I'm trying to make is, you know, whether he rams the vehicle or barely touches the vehicle is not in the record. And I think when you decide those facts, you should weigh against the government because it's their burden. And the government has conceded the gun is almost irrelevant because he had the right to have a gun. Yeah, he did. And also, it wasn't his gun. The gun was the passenger's gun. So the point is we have to decide whether the crash. Right. And under those sparse details, again, the government could have called witnesses and stuff to prove that there was some violence here other than him being boxed in and contacting two vehicles. I think the court should assume the least dangerous facts there because the government failed its burden to prove anything else. Like it did in Bettencourt and Reyes when it established speed and injuries and all these other things that occurred. What about that? What about trying to put some coherence to Fifth Circuit law on the virtue of, oh, the statute says any felon would know they can't have a gun. So we start with the assumption they all can't. And then it's on the defendant affirmatively to prove but they're a good guy. They're not so scary or violent. What about that? I think the Second Amendment is not a second class right. I think that people should presumptively be allowed to have firearms unless there's a clear- And that's what we said in Diaz, right? Right. Right. That's correct. The final thing I'll say, Judge, is just to defend myself just a little bit here is that- You can't bring a gun into this building. Yeah. And I would never try. You guys are in good command of our case law. I don't think you need to defend yourself. Well, I guess maybe not defend myself is not the right word. But the reason why I don't talk a lot about the categorical approach in this brief is I've been talking about that for a year and it's gotten nowhere. And I filed- In Morgan, I filed an en banc petition because Morgan would have won under the categorical approach. Well, it's the Second Amendment. So maybe you should be filing- Maybe this court is just not going to be that receptive to it. Who knows? But why not file- Are you filing cert petitions? I mean, I get a denial every week from the Supreme Court, but- And the SG's position is they now have a little office that you could actually get your rights restored. That's their primary argument against cert? That's the rumor that that's an avenue. That is their response to the cert petitions, yes, if that's what you're asking. Okay. Thank you. Thank you. We appreciate both sides and we'll now take this case and decide it. And we have one more case, but we're going to take a short break. We'll be back around 1025.